FIRST NATIONAL BANK OF MANISTEE *v.* STAR WATCH
CASE CO. OF LUDINGTON.

1. BILLS AND NOTES—NEGOTIABLE INSTRUMENTS—INDORSEMENT—
BURDEN OF PROOF.
    A plaintiff suing on an indorsement of a negotiable note
    that was dishonored has the burden of proving notice
    of dishonor.

2. SAME—NOTICE OF DISHONOR—EVIDENCE.
    Where the notary that protested the paper testified that
    he mailed notice of nonpayment within due time to the
    indorser, the witness being cashier of plaintiff's bank,
    and the payee gave evidence that it received no notice
    of dishonor, and several days after the maturity there
    was no protest attached to it, the question whether notice
    was duly mailed became a question for the jury under
    section 107, Act No. 265, Pub. Acts 1905, providing that
    if addressed and deposited in the post office sufficient
    notice shall be presumed to have been given.

Error to Mason; Withey, J. Submitted January 20,
1915. (Docket No. 11.) Decided July 23, 1915.

Assumpsit by the First National Bank of Manistee
against the Star Watch Case Company of Ludington
on an indorsement of a promissory note. Judgment
for defendant. Plaintiff brings error. Affirmed.

*A. A. Keiser* (*Howard L. Campbell,* of counsel), for
appellant.

*David K. Tone* and *Robert J. Quail,* for appellee.

KUHN, J. This is a suit brought by the plaintiff to
recover on a note given by the Manistee Watch Com-
pany to the defendant company for the sum of $5,-
994, and which note was discounted by the plaintiff
upon its being indorsed by the defendant. At the ma-

turity of the note it was dishonored by nonpayment; the Manistee Watch Company being unable at the time to meet the demand. The note on its face was a foreign bill of exchange, being dated at Chicago, March 24, 1910. On its being dishonored, the plaintiff, according to its claim, took the proper legal steps to bind the defendant to its obligation as indorser upon the note, and, the defendant not having met its obligation as indorser, this suit was instituted to enforce the obligation.

Mr. George A. Dunham, who is the cashier of the plaintiff bank and also a notary public, testified that on March 24, 1911, it being the day on which the note fell due, he presented it for payment to the bank where the note was made payable, and that, payment not having been made, he sent a notice of the nonpayment to the Star Watch Case Company of Ludington, Mich., and that afterwards he wrote up and attached a certificate of protest to the note, and that later on the same day he wrote across the face of the note:

"Protested for nonpayment March 24, 1911.
        "G. A. Dunham, Notary Public."

He further claimed that he took the notice and personally carried it to the post office and there deposited it, it being inclosed in an envelope directing it to be returned to the bank in five days. On the hearing of the case, testimony was admitted by the trial judge to show that the notice of nonpayment was not received by the appellee. It also appears that Mr. Rath, who was the president of the Manistee Watch Company, testified that on March 27th, three days after the note was due, he saw Mr. Dunham, who asked him at that time what he was going to do about the note, and that he was shown the note, and that the words "Protested for nonpayment March 24, 1911," were not written thereon at that time.

Counsel for appellant thus state the only question which is before us for review:

"The question in this case, then, is simply whether the evidence offered by the defendant of its nonreceipt of the notice was competent and proper proof to be submitted to the jury in contradiction of the sworn testimony of the notary upon the witness stand that such notice was given in the manner required by law."

Section 107 of Act No. 265, Pub. Acts 1905 (2 How. Stat. [2d Ed.] § 2778), which act is known as the "Negotiable Instruments Acts," provides:

"Where notice of dishonor is duly addressed and deposited in the postoffice, the sender is deemed to have given due notice, notwithstanding any miscarriage in the mails."

As a preliminary question, counsel for appellant contend that the court erred in instructing the jury that the burden of proof rested upon plaintiff to establish the fact of mailing the notice, and that the failure to receive notice is rather matter of affirmative defense, special notice of which must be given under Circuit Court Rule 7b. We are of the opinion, however, that the trial judge correctly charged that the burden of proof rested upon the plaintiff to show a compliance with the statutory provisions in order to hold the indorser, as the liability of the indorser depends entirely upon compliance with the statute as to notice. This is sustained by the following authorities: *Commercial National Bank* v. *Zimmerman,* 185 N. Y. 210 (77 N. E. 1020); *Robinson* v. *Aird,* 43 Fla. 30, 38 (29 South. 633); *Rolla State Bank* v. *Pezoldt,* 95 Mo. App. 404, 411 (69 S. W. 51).

It must be conceded that by virtue of the negotiable instruments act it is of no importance whether or not the notice required by the statute is received, if it appears that the notice of nonpayment was placed in the mail as required by the statute. And the ques-

tion here is whether under the circumstances of this case any question of fact can be raised as to whether or not the notice of nonpayment was actually deposited in the post office as testified to by the cashier. It is true that where a disinterested witness, a notary public, testifies that such notice was properly mailed, or where a properly executed certificate of such a notary public showing such mailing is introduced in evidence, testimony of nonreceipt of the notice has been held immaterial. Bunker on Negotiable Instruments, p. 163, and cases cited. In *Roberts* v. *Wold*, 61 Minn. 291 (63 N. W. 739), the court said:

"Evidence that a communication alleged to have been sent by mail was never received may, in many cases, justify a verdict of finding that it was never sent; but such evidence, standing alone and uncorroborated, is not sufficient to overcome the probative force of the solemn official certificate of a notary public to his act of protest. The reasons for this rule are fully stated in *Wilson* v. *Richards*, 28 Minn. 337 [9 N. W. 872]."

But in the case before us we are not dealing with the certificate of a notary public, nor with the testimony of what we conceive to be a disinterested witness. The facts here presented are very similar to those in the case of *Kingsland Land Company* v. *Newman*, 1 App. Div. 1 (36 N. Y. Supp. 960), in which case the court said:

"The question presented was whether the notice of nonpayment had been deposited in the post office. Vail testified that he personally deposited it, properly directed, with the postage prepaid. But the note was then held by the Commercial Bank, and Vail was its cashier and a notary public, who undertook to present and protest the commercial paper held by it. He was not a disinterested witness, and we are of the opinion that the credibility of his testimony was for the jury to determine.

"In *Canajoharie Bank* v. *Diefendorf*, 123 N. Y. 191 [25 N. E. 402, 10 L. R. A. 676], in speaking of the relation of a cashier to his bank, the court said:

" 'The claim that the plaintiff's cashier was a disinterested witness, whose testimony must be regarded as controlling, if not contradicted, cannot be sustained. * * * He was the financial agent of the plaintiff, and * * * responsible to his principal for the care, fidelity, and prudence with which he discharged his official duties. His interest in the transaction was co-extensive with that of the plaintiff, and brings him directly within the cases which hold that the credibility of such a witness is a question for the jury to determine.'

"We are of the opinion that Vail's relation to the bank was such that the jury should have been permitted to determine whether his testimony was to be believed.

"The fact that the notice had not been received by the appellant, though it would have been of very little weight against the positive testimony of a disinterested person that it had been deposited in the post office, was yet a circumstance which, in this case, the appellant was entitled to have the jury consider."

We are of the opinion that the fact that Mr. Dunham was an officer of the bank, and in that way an interested witness, and the testimony of Mr. Rath as to seeing the note without any writing thereon three days after it was claimed by Mr. Dunham that he made the memorandum, constitute sufficient evidence to raise a question of fact as to whether or not the notice was actually mailed, and justify the court in submitting this question to the jury.

The judgment must therefore be affirmed.

BROOKE, C. J., and STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.