GLADYS BROWN, Respondent, *v.* THE PROVIDENT LOAN SOCIETY OF NEW YORK, Appellant.

First Department, October 27, 1939.

*Neil P. Cullom* of counsel [*Frederick M. Schlater* with him on the brief; *De Forest & Elder*, attorneys], for the appellant.

*A. L. Geilich* of counsel [*Robert Morris* with him on the brief], for the respondent.

GLENNON, J. Plaintiff has recovered a judgment against the defendant for conversion. The facts out of which this litigation grew are substantially as follows: Plaintiff resides at 55 Clinton avenue, Jersey City, N. J. She obtained a loan for $3,500 from the defendant on September 12, 1929. She paid on account of principal the sum of $500 in 1930. The loan was renewed from year to year until July 24, 1934, when it appears that the amount due was $3,193. A pawn ticket was issued to her on that date which reads in part as follows: " This loan may not be renewed upon payment of interest only. Within one year it may be repaid in full or reduced by an instalment of not less than $160, with interest due, in which event a new ticket evidencing the new loan will be issued. If such payment is not made within one year, the collateral may be sold."

The one-year term which is referred to in the ticket expired on July 24, 1935. No payments were made by the plaintiff on account of principal and interest when due and as a result the collateral was sold at public auction on December 12, 1935. The loss which the defendant sustained upon the sale was $84.60. Plaintiff was familiar from her dealings with defendant as to the conditions which applied to her renewal of the loan. She was constantly in default in making payments of installments on account of principal, and also the interest. She did not make a tender of interest and the required installment of principal until December 26, 1935, after her collateral had been sold.

The question with which we are concerned is — did the defendant comply with section 49 of the General Business Law, as amended, before selling plaintiff's jewelry at public auction? This section reads: " Notice of such sale. No pledge shall be sold unless written or printed notice of intention to sell with a statement of the article or articles to be sold has been first mailed by letter addressed to the pledgor at the address given at the time of pledging at least ten days prior to the date of sale."

Plaintiff contended at the trial that she did not receive notice as required under this section and, consequently, she asserted that the defendant had converted her property and that she was

entitled to recover the value. The case was submitted to the jury and she received an award of $3,500, with interest and costs, which in all amounted to the sum of money provided for in the judgment.

Defendant claims that the proof it offered upon the trial showed that it complied with the statutory requirement by mailing a proper notice.

We are inclined to the view, after examining the record in this case, that the defendant established that the notice of sale was mailed to the plaintiff at her address in compliance with section 49 of the General Business Law as amended.

Defendant called as its principal witness Wallace P. Furbush, whose duty it was to mail notices. He detailed at length the practice which the society followed in regard to notices. First of all, Furbush said it was the practice of the defendant to send a preliminary notice to all borrowers who were in default. While there was no obligation imposed by law upon the lender to send a preliminary notice, nevertheless, it was deemed good business methods to do so. He then outlined the practice which the defendant pursued in complying with the section which governs the statutory notice of sale. He testified, in short, that he was supplied with a typewritten list which gave the numbers of loans in default as to which a final notice was to be sent. With this list he received the final notices, which were carbon copies of the original memoranda of loans made and retained by the defendant. The original memoranda contained a statement as to the amount of the loan, its date, loan number, the name of the borrower together with address and a brief description of the collateral. He compared the face of the final notice with the original. He then stamped in on the reverse side of the notice the date of mailing as well as the date upon which the loan could be redeemed. The notices were thereupon placed in window envelopes, so styled, containing a return address.

The loan number as well as the name and address of the pledgor appeared through the windows of the envelopes. The plaintiff's loan number which was T-56023 appeared on the typewritten sheet as one in default. Furbush then checked and found that the number on the envelope and the one on the sheet corresponded. He thereupon made a check mark on the typewritten list. Having checked all of the envelopes with the numbers, the witness placed postage stamps upon the envelopes, which in turn were put in boxes and personally brought by him to the Madison Square Branch of the New York Postoffice where they were delivered to a postal clerk.

In addition he stamped on his list of loans in default: "CHECKED BY ME PERSONALLY WITH NOTICES MAILED ON OCT. 26, 1935," and signed his name to the statement.

Although Furbush admitted that he had no personal recollection of the particular notice in question since he sent out thousands during the course of the year, he testified that from his records he was in a position to say that he had mailed the notice of sale to the plaintiff on October 26, 1935, and further that it was not returned.

We believe that the defendant fulfilled its duty in so far as the plaintiff is concerned by mailing to her the required notice prior to the time of sale. (*Trusts & Guarantee Co.* v. *Barnhardt*, 270 N. Y. 350; *Goeller* v. *Equitable Life Assur. Society of U. S.*, 251 App. Div. 371; *Title Guarantee & Trust Co.* v. *Geller*, 254 id. 574.)

Defendant has produced an employee whose testimony is not impeached or contradicted; it is not incredible or subject to suspicion. In fact, it is supported by a written statement made contemporaneously with the mailing of the notice. In opposition to this we have only the flat denial of the plaintiff that she received the notice. Under the circumstances no question of fact properly could be presented to the jury. (*Chesapeake & Ohio Railway Co.* v. *Martin*, 283 U. S. 209.) Whether or not the notice was actually received at plaintiff's address does not appear, since she failed to call the other members of her household. In any event, all that defendant was required to do was to show that it had complied with section 49 of the General Business Law, as amended.

For the reasons assigned the judgment should be reversed, with costs, and the complaint dismissed, with costs.

UNTERMYER, DORE and COHN, JJ., concur; MARTIN, P. J., dissents.

Judgment reversed, with costs, and the complaint dismissed, with costs.